## R. B. GRIFFITH v. FRANKFORT GENERAL INSURANCE COMPANY, a Corporation.

(159 N. W. 19.)

Building contractors — employers — employees — neligence — injuries — liability insurance — claims under — for injuries sustained — workman — advancement to for injuries — settlement by company — with workman — claim agent — ratification of — by failure to repudiate — insurance policy — recognizing liability thereunder — waiver of rights.

Plaintiff through contractors erected a building, safeguarding against liability for negligent injuries to workmen by employers liability insurance taken of defendant company. One Westby was injured while working on said building, and made a claim of plaintiff for injuries and for wages during lost time. Defendant's claim agent settled with Westby. Plaintiff alleges it retained $150 for him deducted from Westby's claim and which amount plaintiff had ad-

vanced the laborer pending settlement. Defendant claims it settled for $150 less than the claim presented, and made no agreement with Westby to reimburse plaintiff for his advances to Westby. Verdict in plaintiff's favor. Defendant appeals.

*Held:* (1) The evidence was sufficient to justify submission to the jury and sufficient to support the verdict.

(2) Though the claim agent was without actual authority to make settlement found by the jury to have been made, defendant could waive any want of authority and ratify the settlement, and has done so by failing to repudiate it.

(3) It cannot avail of a favorable settlement with Westby, relieving it from liability on its insurance contract, and at the same time keep money it agreed on said settlement with Westby to pay to Griffith, under claim that under the contract it could have defended and refused to have paid anything, because Griffith advanced said $150 in violation of its insurance contract.

(4) By recognizing its responsibility under the insurance policy by settling with Westby thereunder, it waived any right to avoid the same to defeat payment to plaintiff, of the money it received in such settlement for him.

Opinion filed July 28, 1916.

From a judgment of the District Court of Grand Forks County, *Cooley,* J., defendant appeals.

Affirmed.

*Murphy & Toner,* for appellant.

An agent cannot do indirectly what he is forbidden to do directly. The agent in this case had no authority to bind the company to the promise to pay Griffith any sum of money to reimburse him for advancement made to the injured workman. He had no ostensible or apparent authority to make the alleged promise. Corey v. Hunter, 10 N. D. 5, 84 N. W. 570; Hurley v. Watson, 68 Mich. 531, 36 N. W. 726; Kraniger v. People's Bldg. Soc. 60 Minn. 94, 61 N. W. 904; United States Bedding Co. v. Andre, 105 Ark. 111, 41 L.R.A.(N.S.) 1019, 150 S. W. 413, Ann. Cas. 1914D, 800; Baker v. Seaward, 63 Or. 350, 127 Pac. 961; Siebold v. Davis, 67 Iowa, 560, 25 N. W. 778; Cornish v. Woolverton, 32 Mont. 456, 108 Am. St. Rep. 598, 81 Pac. 4; Trull v. Hammond, 71 Minn. 172, 73 N. W. 642; Burchard v. Hull, 71 Minn. 430, 74 N. W. 163; Oberne v. Burke, 30 Neb. 581, 46 N. W. 842; Edwards v. Dooley, 120 N. Y. 540, 24 N. E. 827.

The fact of agency, or the extent of the agent's authority, cannot be

proved by the admissions or declarations of the agent. Plano Mfg. Co. v. Root, 3 N. D. 165, 54 N. W. 924; Taylor v. Commercial Bank, 174 N. Y. 181, 62 L.R.A. 783, 95 Am. St. Rep. 564, 66 N. E. 726; Somers v. Germania Nat. Bank, 152 Wis. 210, 138 N. W. 713; Gordon v. Vermont Loan & T. Co. 6 N. D. 454, 71 N. W. 556; Walsh v. St. Paul Trust Co. 39 Minn. 23, 38 N. W. 631.

The doctrine of apparent or ostensible authority in an agent cannot be invoked by one who relied only on the alleged agent's declaration of authority and made no inquiry as to the true situation. Christ v. Garretson State Bank, 13 S. D. 23, 82 N. W. 89; Q. W. Loverin-Browne Co. v. Bank of Buffalo, 7 N. D. 569, 79 N. W. 923.

Implied authority of an agent can only be *implied* from *facts*. Such authority, if it exists at all, must find its source in the *intention* of the principal, either express or implied. If that intention cannot be shown the authority cannot exist. Mechem Agency, §§ 274, 289, 290, pp. 176, 177, 190, 191; Pehl v. Fanton, 17 Cal. App. 247, 119 Pac. 400; Sullivant v. Jahren, 71 Kan. 127, 79 Pac. 1071; Brown v. Grady, 16 Wyo. 151, 92 Pac. 622; Downing Invest. Co. v. Coolidge, 46 Colo. 345, 104 Pac. 392; Speer v. Craig, 16 Colo. 478, 27 Pac. 891; Bank v. Pacific Coast S. S. Co. 95 Cal. 1, 29 Am. St. Rep. 85, 30 Pac. 96; Schaeffer v. Consolidated Nat. Mut. Ben. L. Ins. Co. 38 Mont. 459, 100 Pac. 225; Stock Exch. Bank v. Williamson, 6 Okla. 348, 50 Pac. 93; Mitrovich v. Fresno Fruit Packing Co. 123 Cal. 379, 55 Pac. 1064; Ming v. Pratt, 22 Mont. 262, 56 Pac. 279; Saving & L. Soc. v. Gerichten, 64 Cal. 520, 2 Pac. 405; Rust v. Eaton, 24 Fed. 830; Merritt v. Wassenich, 49 Fed. 785; United States Bedding Co. v. Andre, 105 Ark. 111, 41 L.R.A.(N.S.) 1019, 150 S. W. 413, Ann. Cas. 1914D, 800; Wilson v. Shocklee, 94 Ark. 301, 126 S. W. 832; McGraw v. O'Neil, 123 Mo. App. 691, 101 S. W. 132; Galveston, H. & S. A. R. Co. v. Allen, 42 Tex. Civ. App. 576, 94 S. W. 417; Heath v. Paul, 81 Wis. 532, 51 N. W. 876; Siebold v. Davis, 67 Iowa, 560, 25 N. W. 778; Miller v. Sawbridge, 29 Minn. 442, 13 N. W. 671; Kinman v. Botts, 147 Iowa, 474, 124 N. W. 773; Spies v. Stein, 70 Neb. 641, 97 N. W. 752; Wilken v. Voss, 120 Iowa, 500, 94 N. W. 1123; Staten v. Hammer, 121 Iowa, 499, 96 N. W. 964; De Sollar v. Hanscome, 158 U. S. 216, 39 L. ed. 956, 15 Sup. Ct. Rep. 816.

The plaintiff here could not recover under the policy of insurance.

If he could not so recover, it was because of the prohibitive terms of the policy, and if the policy was voided by the violation of these prohibitive terms, then these terms could not have been waived and must have been in full force at the time of the trial. Hammer v. Downing, 39 Or. 504, 64 Pac. 651, 65 Pac. 17, 990, 67 Pac. 30.

It is a general rule that an action for money had and received cannot be resorted to where there is a contract open and unexecuted and the breach of the contract is the basis of the suit. Vincent v. Rogers, 30 Ala. 471; Barrera v. Somps, 113 Cal. 97, 45 Pac. 177, 572; Rollins v. Duffy, 14 Ill. App. 69; Atkinson v. Scott, 36 Mich. 18; Peltier v. Sewall, 3 Wend. 269; Chesapeake & O. Canal Co. v. Knapp, 9 Pet. 541, 9 L. ed. 222; Charles v. Dana, 14 Me. 383; Field v. Banks, 177 Mass. 36, 58 N. E. 155; Richards v. Killam, 10 Mass. 239, 6 Am. Dec. 119; Clark v. Sherman, 5 Wash. 681, 32 Pac. 771; Distler v. Dabney, 3 Wash. 200, 28 Pac. 335; Middleport Woolen Mills Co. v. Titus, 35 Ohio St. 253.

There are *no promises* in the contract to pay *plaintiff* anything. Plaintiff being a stranger to the contract and its consideration, and there being nothing in it to indicate that it was made for his benefit, a suit thereon by plaintiff is not maintainable. Parlin v. Hall, 2 N. D. 473, 52 N. W. 405; Burton v. Larkin, 36 Kan. 246, 59 Am. Rep. 541, 13 Pac. 398; Savings Bank v. Thornton, 112 Cal. 255, 44 Pac. 466; Baxter v. Camp, 71 Conn. 245, 42 L.R.A. 514, 71 Am. St. Rep. 169, 41 Atl. 803; Wright v. Terry, 23 Fla. 160, 2 So. 6; Lowe v. Turpie, 147 Ind. 652, 37 L.R.A. 233, 44 N. E. 25, 47 N. E. 150; German State Bank v. Northwestern Water & Light Co. 104 Iowa, 717, 74 N. W. 685; Greenwood v. Sheldon, 31 Minn. 254, 17 N. W. 478; Frerking v. Thomas, 64 Neb. 193, 89 N. W. 1005; Washburn v. Interstate Invest. Co. 26 Or. 436, 36 Pac. 533, 38 Pac. 620; Montgomery v. Rief, 15 Utah, 495, 50 Pac. 623; Davis v. Patrick, 122 U. S. 138, 30 L. ed. 1090, 7 Sup. Ct. Rep. 1102; Fish & H. Co. v. New England Homestake Co. 27 S. D. 221, 130 N. W. 841.

Plaintiff is here trying to enforce, for his own benefit, a contract between defendant and Westby, and hence is bound by the rule that prior oral negotiations, promises, and statements are merged in the written contract, and will not be permitted to contradict same. 21 Am. & Eng. Enc. Law, 1079, and cases cited; Schultz v. Plankinton Bank,

141 Ill. 116, 33 Am. St. Rep. 290, 30 N. E. 346; Sayre v. Burdick, 47 Minn. 367, 50 N. W. 245; Schneider v. Kirkpatrick, 80 Mo. App. 145; Selchow v. Stymus, 26 Hun, 145; Hankinson v. Riker, 10 Misc. 185, 30 N. Y. Supp. 1040; Minneapolis, St. P. & S. Ste. M. R. Co. v. Home Ins. Co. 55 Minn. 242, 22 L.R.A. 390, 56 N. W. 815; Wodock v. Robinson, 148 Pa. 503, 24 Atl. 73.

The release here is not a mere receipt; it is a complete contract, and, standing unimpeached for fraud or mistake, precludes all parties. Hess v. Great Northern R. Co. 98 Minn. 198, 108 N. W. 7, 803; Hubbard v. Hartford F. Ins. Co. 33 Iowa, 325, 11 Am. Rep. 125; Atchison, T. & S. F. R. Co. v. VanOrdstrand, 67 Kan. 386, 73 Pac. 113; Barker v. Northern P. R. Co. 65 Fed. 461; Louisville Veneer Mills Co. v. Clemonts, 33 Ky. L. Rep. 106, 109 S. W. 308; McCormick v. St. Louis, 166 Mo. 315, 65 S. W. 1038; Denver & R. G. R. Co. v. Sullivan, 21 Colo. 302, 41 Pac. 501; Jossey v. Georgia Southern & F. R. Co. 109 Ga. 439, 34 S. E. 664; Christianson v. Chicago, St. P. M. & O. R. Co. 67 Minn. 94, 69 N. W. 640, 16 Am. Neg. Cas. 314.

A receipt is the mere written acknowledgment of the fact of payment. Thompson v. Layman, 41 Minn. 295, 42 N. W. 1061; Ryan v. Ward, 48 N. Y. 204, 8 Am. Rep. 539; Sargeant v. National L. Ins. Co. 189 Pa. 341, 41 Atl. 351.

A receipt is a mere evidence of a fact, and differs from a *release*, which extinguishes a pre-existing right. Equitable Securities Co. v. Talbert, 49 La. Ann. 1393, 22 So. 762.

A receipt in full may be explained or disputed, but a release estops and concludes forever. Crane v. Alling, 15 N. J. L. 423; Sherburne v. Goodwin, 44 N. H. 276; Illinois C. R. Co. v. Read, 37 Ill. 484, 87 Am. Dec. 260; Cory v. Chicago, B. & K. C. R. Co. 100 Mo. 282, 13 S. W. 346; Northwestern Union Packet Co. v. Clough, 20 Wall. 528, 22 L. ed. 406, 7 Am. Neg. Cas. 317; Webster v. Ela, 5 N. H. 540; Missouri P. R. Co. v. Goodholm, 61 Kan. 758, 60 Pac. 1066; Walther v. Briggs, 69 Minn. 98, 71 N. W. 909; Thorn Wire Hedge Co. v. Washburn & M. Mfg. Co. 159 U. S. 423, 40 L. ed. 205, 16 Sup. Ct. Rep. 94.

In contemplation of law, the sum total of the powers which the principal has *caused* or *permitted* his agent to seem to possess is the agent's authority. Aldrich v. Wilmarth, 3 S. D. 523, 54 N. W. 811; 40 Century Dig. title, Principal & Agent, § 254.·

Instructions to an agent cover not only the *powers conferred* and which are to be made known to third parties, but also private directions as to the manner in which he shall execute his authority, and not intended to be communicated to third persons dealing with the agent, because of their nature. Bryant v. Moore, 26 Me. 84, 45 Am. Dec. 96; Van Santvoord v. Smith, 79 Minn. 316, 82 N. W. 642; Towle v. Leavitt, 23 N. H. 360, 55 Am. Dec. 195.

These can have no effect to qualify the liability of the principal to third persons, to whom they are not, and are not intended to be made known. Barnes v. Downes, 2 Tex. App. Civ. Cas. (Willson) 472; Young v. Wright, 4 Wis. 144, 65 Am. Dec. 303; Farmers' & M. Bank v. Butchers' & D. Bank, 16 N. Y. 125, 69 Am. Dec. 678; Moore v. Tickle, 14 N. C. (3 Dev. L.) 244; Lauer Brewing Co. v. Schmidt, 24 Pa. Super. Ct. 396.

Limitations of authority which are known to a person dealing with an agent are as binding upon such persons as they are upon the agent, and he can acquire no rights against the principal by dealing with the agent contrary thereto. Hutson v. Prudential Ins. Co. 122 Ga. 847, 50 S. E. 1000; Lucas v. Rader, 29 Ind. App. 287, 64 N. E. 488; Fritz v. Chicago Grain & Elevator Co. 136 Iowa, 699, 114 N. W. 193; Seven Hills Chautauqua Co. v. Chase Bros. Co. 26 Ky. L. Rep. 334, 81 S. W. 238; Carson v. Culver, 78 Mo. App. 597; Bradley v. Basta, 71 Neb. 169, 98 N. W. 697; Dietz v. City Nat. Bank, 42 Neb. 584, 60 N. W. 896; Catoir v. American L. Ins. & T. Co. 33 N. J. L. 487; Gilbert v. Deshon, 107 N. Y. 324, 14 N. E. 318; Universal Metal Co. v. Durham & C. R. Co. 145 N. C. 293, 59 S. E. 50; Suffolk Peanut Co. v. Luden, 32 Pa. Super. Ct. 603; Topham v. Roche, 2 Hill, 307, 27 Am. Dec. 387; National Guarantee & Loan Co. v. Thomas, 28 Tex. Civ. App. 379, 67 S. W. 454; Bank of Ravenswood v. Wetzel, 58 W. Va. 1, 70 L.R.A. 305, 50 S. E. 888, 6 Ann. Cas. 48; Authors & Newspapers Asso. v. O'Gorman Co. 147 Fed. 616; Russ v. Telfener, 57 Fed. 973.

It is proper to receive evidence to establish the agent's authority, or to show the knowledge of third persons dealing with the agent as to his authority and any limitations thereon. Foss-Schneider Brewing Co. v. McLaughlin, 5 Ind. App. 415, 31 N. E. 838; Sage v. Haines, 76 Iowa, 581, 41 N. W. 366; Shaw v. Williams, 100 N. C. 272, 6 S. E. 196; Wheeler v. McGuire, 86 Ala. 398, 2 L.R.A. 808, 5 So. 190;

Mitrovich v. Fresno Fruit Packing Co. 123 Cal. 379, 55 Pac. 1064; Lucas v. Rader, 29 Ind. App. 287, 64 N. E. 488; Humphrey v. Havens, 12 Minn. 298, Gil. 196; McGraw v. O'Neil, 123 Mo. App. 691, 101 S. W. 132; Rathbun v. Snow, 123 N. Y. 343, 10 L.R.A. 355, 25 N. E. 379; Tompkins Machinery & Implement Co. v. Sherrill, 84 Tex. 627, 19 S. W. 860; Galveston H. & S. A. R. Co. v. Allen, 42 Tex. Civ. App. 576, 94 S. W. 417; Crawford v. Whittaker, 42 W. Va. 430, 26 S. E. 516; Bartlet v. L. Bartlett & Son Co. 116 Wis. 450, 93 N. W. 473.

The by-laws of a corporation are properly receivable as evidence of the defendant's claim of limited authority in the agent, as a part of its defense. Grant County State Bank v. Northwestern Land Co. 28 N. D. 500, 150 N. W. 736; Thatcher v. Kaucher, 2 Colo. 698; J. I. Case Threshing Mach. Co. v. Eichinger, 15 S. D. 530, 91 N. W. 82; Nininger v. Knox, 8 Minn. 140, Gil. 110; Mt. Morris Bank v. Gorham, 169 Mass. 519, 48 N. E. 341; Clark v. Dillman, 108 Mich. 625, 66 N. W. 570; Wimp v. Early, 104 Mo. App. 85, 78 S. W. 343.

Ratification is alleged by the plaintiff and denied by the defendant. The burden of proving ratification was on plaintiff. Valley Bank v. Brown, 9 Ariz. 311, 83 Pac. 362; Chicago Cottage Organ Co. v. Stone, 71 Ark. 643, 73 S. W. 392; Dean v. Hipp, 16 Colo. App. 537, 66 Pac. 804; Sears v. Daly, 43 Or. 346, 73 Pac. 5; Moore v. Ensley, 112 Ala. 228, 20 So. 744; Smyth v. Lynch, 7 Colo. App. 383, 43 Pac. 670; Skirvin v. O'Brien, 43 Tex. Civ. App. 1, 95 S. W. 696; Combs v. Scott, 12 Allen, 493; Henderhen v. Cook, 66 Barb. 21; Nichols v. Bruns, 5 Dak. 28, 37 N. W. 752; Martin v. Hickman, 64 Ark. 217, 41 S. W. 852; Lambert v. Gerner, 142 Cal. 399, 76 Pac. 53; Schollay v. Moffitt-West Drug Co. 17 Colo. App. 126, 67 Pac. 182; Britt v. Gordon, 132 Iowa, 431, 108 N. W. 319, 11 Ann. Cas. 407; St. John & M. Co. v. Cornwell, 52 Kan. 712, 35 Pac. 785; Pittsburgh & O. Min. Co. v. Scully, 145 Mich. 229, 108 N. W. 503; Johnson v. Ogren, 102 Minn. 8, 112 N. W. 894; Nord v. Boston & M. Consol. Copper & S. Min. Co. 33 Mont. 464, 84 Pac. 1116, 89 Pac. 647; Fitzgerald v. Kimball Bros. Co. 76 Neb. 236, 107 N. W. 227; Stock Exch. Bank v. Williamson, 6 Okla. 348, 50 Pac. 93; Quale v. Hazel, 19 S. D. 483, 104 N. W. 215; Knapp v. Smith, 97 Wis. 111, 72 N. W. 349; Schutz v. Jordan, 141 U. S. 213, 35 L. ed. 705, 11 Sup. Ct. Rep. 906.

In order to establish ratification, it must clearly appear that the principal was informed of all the facts and circumstances, and that no material fact was suppressed or withheld. Bank of Owensboro v. Western Bank, 13 Bush, 526, 26 Am. Rep. 211; Mummy v. Haggerty, 15 La. Ann. 268; Brown v. Bamberger, 110 Ala. 342, 20 So. 114; McGlassen v. Tyrrell, 5 Ariz. 51, 44 Pac. 1088; Nicklase v. Griffith, 59 Ark. 641, 26 S. W. 381; Wagoner v. Silva, 139 Cal. 559, 73 Pac. 433; Dean v. Hipp, 16 Colo. App. 537, 66 Pac. 804; Eggleston v. Mason, 84 Iowa, 630, 51 N. W. 1; Woods v. Palmer, 151 Mich. 30, 115 N. W. 242; Jackson v. Badger, 35 Minn. 52, 26 N. W. 908; Shull v. New Birdsall Co. 15 S. D. 8, 86 N. W. 654.

If the issue of fact submitted by the court had really been the issue raised by the evidence, a verdict for defendant should have been *directed, because there was no promise for the benefit of a third party.* The remedy, if any, was under the contract to Westby. Burton v. Larkin, 36 Kan. 246, 59 Am. Rep. 541, 13 Pac. 398; Chung Kee v. Davidson, 73 Cal. 522, 15 Pac. 100; Emmitt v. Brophy, 42 Ohio St. 82; Johannes v. Phenix Ins. Co. 66 Wis. 50, 57 Am. Rep. 249, 27 N. W. 414; Parlin v. Hall, 2 N. D. 473, 52 N. W. 405.

If a third party seeks to enforce a contract between others, he must show some *promise for his benefit,* or he cannot maintain such action. Baxter v. Camp, 71 Conn. 245, 42 L.R.A. 514, 71 Am. St. Rep. 169, 41 Atl. 803; State v. St. Louis & S. F. R. Co. 125 Mo. 596, 28 S. W. 1074; Winn v. Lippincott Invest. Co. 125 Mo. 528, 28 S. W. 998; Gifford v. Corrigan, 117 N. Y. 257, 6 L.R.A. 610, 15 Am. St. Rep. 508, 22 N. E. 756; Bartley v. Rhodes, — Tex. Civ. App. —, 33 S. W. 604; Lovejoy v. Howe, 55 Minn. 353, 57 N. W. 57; Etscheid v. Baker, 112 Wis. 129, 88 N. W. 52; Thomas Mfg. Co. v. Prather, 65 Ark. 27, 44 S. W. 218; Starbird v. Cranston, 24 Colo. 20, 48 Pac. 652; Beeson v. Green, 103 Iowa, 406, 72 N. W. 555; Stephenson v. Elliott, 53 Kan. 550, 36 Pac. 980; Morgan v. Overman Silver Min. Co. 37 Cal. 534; Pugh v. Barnes, 108 Ala. 167, 19 So. 370; Sanders v. Clason, 13 Minn. 379, Gil. 352; Washburn v. Interstate Invest. Co. 26 Or. 436, 36 Pac. 533, 38 Pac. 620; Parker v. Jeffery, 26 Or. 186, 37 Pac. 712; Buckley v. Gray, 110 Cal. 339, 31 L.R.A. 862, 52 Am. St. Rep. 88, 42 Pac. 100; Savings Bank v. Thornton, 112 Cal. 255, 44 Pac. 466; Mont-

gomery v. Rief, 15 Utah, 495, 50 Pac. 623; American Exch. Nat. Bank v. Northern P. R. Co. 76 Fed. 130.

*H. A. Bronson,* for respondent.

There is no privity of contract between the employee and the insurer on a policy of indemnity insurance; the contract is for the benefit of the employer. 15 Cyc. 1038; Finley v. United States Casualty Co. 113 Tenn. 592, 83 S. W. 2, 3 Anno. Cas. 962; Allen v. Ætna L. Ins. Co. 7 L.R.A.(N.S.) 958, 76 C.C.A. 265, 145 Fed. 881.

It is fundamental that the true consideration of a release, receipt, or even of a deed, may be established by parol evidence outside of the instrument itself. 6 Am. & Eng. Enc. Law, p. 769.

If one, with full knowledge of the facts, accepts the avails of an unauthorized treaty made in his behalf by another, he thereby ratifies such treaty, and is bound by its terms as fully as though he had made it himself. He ratifies, by accepting of benefits in part even, the whole transaction. 2 C. J. 504; 1 Am. & Eng. Enc. Law, 1196; McCaull v. Nichols, 29 N. D. 405, 150 N. W. 932; Merritt v. Adams County Land & Invest. Co. 29 N. D. 496, 151 N. W. 11.

Where a corporation obtains and keeps the proceeds of an unauthorized contract made by one of its officers, it is estopped to repudiate the contract. Clement, B. & Co. v. Michigan Clothing Co. 110 Mich. 458, 68 N. W. 224; Rogers v. Empkie Hardware Co. 24 Neb. 653, 39 N. W. 844; Keim v. Lindley, — N. J. Eq. —, 30 Atl. 1063; Wheeler & W. Mfg. Co. v. Aughey, 144 Pa. 398, 27 Am. St. Rep. 638, 28 W. N. C. 381, 22 Atl. 667.

The principal, by keeping the fruits of an unauthorized act of his agent, ratifies the act and makes it his own. Davis v. Krum, 12 Mo. App. 279; Wyman v. Moore, 103 Cal. 213, 37 Pac. 230; Coykendall v. Constable, 99 N. Y. 309, 1 N. E. 884; Guadelupo y Calvo Min. Co. v. Beatty, — Tenn. —, 1 S. W. 348; Westby v. J. I. Case Threshing Mach. Co. 21 N. D. 575, 132 N. W. 137; Perry v. Simpson Waterproof Mfg. Co. 37 Conn. 520; Humphrey v. Patrons' Mercantile Asso. 50 Iowa, 607; Episcopal Charitable Soc. v. Episcopal Church, 1 Pick. 372; Fleming v. Sherwood, 24 N. D. 144, 43 L.R.A.(N.S.) 945, 139 N. W. 101.

Defendant's exhibit "6" is a letter written by the agent Hagsett to the manager of the company, *after* the settlement with the injured em-

ployee. It relates to a past transaction, was a private communication from one agent to another agent, with no pretense that its contents were ever made known to any of the parties here interested. It was properly excluded. Mulroy v. Jacobson, 24 N. D. 354, 139 N. W. 697; Holt v. Johnson, 129 N. C. 138, 39 S. E. 796; Huston v. Johnson, 29 N. D. 555, 151 N. W. 774; Conner v. Seattle, R. & S. R. Co. 56 Wash. 310, 25 L.R.A.(N.S.) 930, 134 Am. St. Rep. 1110, 105 Pac. 634, and cases cited; United States v. Barker, 4 Wash. C. C. 464, Fed. Cas. No. 14,520; 16 Cyc. 1205; Sargent v. Wording, 46 Me. 464; Capen v. Crowell, 63 Me. 455; Northwestern Fuel Co. v. Central Lumber & Coal Co. 110 Minn. 128, 124 N. W. 981; Duysters v. Crawford, 69 N. J. L. 614, 55 Atl. 823.

Secret and private instructions from officers to agents, or from one agent to another, are not admissible as binding on outside third parties. 31 Cyc. 1327, 1657; Nininger v. Knox, 8 Minn. 140, Gil. 110; Canham v. Plano Mfg. Co. 3 N. D. 229, 55 N. W. 583; Rosenstock v. Tormey, 32 Md. 169, 3 Am. Rep. 125; Meinhold v. Bradley Salt Co. 20 Misc. 608, 46 N. Y. Supp. 346; Farrar v. Duncan, 29 La. Ann. 126; Robbins v. Magee, 76 Ind. 381; McAlpin v. Ziller, 17 Tex. 508; Howell v. Graff, 25 Neb. 130, 41 N. W. 142; Cruzan v. Smith, 41 Ind. 288; Kelly v. Fall Brook Coal Co. 67 Barb. 183; Cornell v. Masten, 35 Barb. 157; 40 Century Dig. p. 1155.

But regardless of these considerations, every principle of estoppel and ratification prohibits the appellant from denying the contract that the agent Hagsett actually made. Wyckoff v. Johnson, 2 S. D. 91, 48 N. W. 837; Chase v. Redfield Creamery Co. 12 S. D. 529, 81 N. W. 951.

Defendant admits and ratifies the settlement covering the $376.50; it cannot ratify a part of an indivisible transaction without ratifying the whole. Comp. Laws 1913, § 6332; Wyckoff v. Johnson, supra.

The defendant knew plaintiff had advanced to Westby a sum of money; it knew this was on account of the injury caused to Westby; it knew that Westby desired that plaintiff should have this money back. Defendant knew all these things and made settlement in the light of them. Comp. Laws 1913, § 6350; Grant County State Bank v. Northwestern Land Co. 28 N. D. 502, 150 N. W. 736.

The issues as framed by the pleadings admit the agency. 31 Cyc.

1632; Hamill v. Baumhover, 110 Iowa, 369, 81 N. W. 620; Cross v. Atchison, T. & S. F. R. Co. 71 Mo. App. 585.

All of the facts in this case show that the doctrine of actual or ostensible authority applies. Grant County State Bank v. Northwestern Land Co. supra.

Where a person has money to which, in equity and good conscience, another is entitled, the law creates a promise by the former to pay it to the latter, and the obligation may be enforced by assumpsit. Devries v. Hawkins, 70 Neb. 656, 97 N. W. 792; McCormick Harvesting Mach. Co. v. Stires, 68 Neb. 432, 94 N. W. 629; Stephenson County v. Manny, 56 Ill. 160; Allsman v. Oklahoma City, 21 Okla. 142, 16 L.R.A.(N.S.) 511, 95 Pac. 468, 17 Ann. Cas. 184; Pardee v. Salt Lake ·County, 39 Utah, 482, 36 L.R.A.(N.S.) 377, 118 Pac. 122, Ann. Cas. 1913E, 202; Holloway v. Talbot, 70 Ala. 389; Maas v. Montgomery Iron Works, 88 Ala. 328, 6 So. 701; Jos. Joseph & Bros. Co. v. Hoffman, 173 Ala. 568, 38 L.R.A.(N.S.) 924, 56 So. 216, Ann. Cas. 1914A, 718; 27 Cyc. 852.

A creditor may maintain an action against a third person upon the promise made to the debtor to pay his debt to the creditor, when the promise is part of the consideration for property, or the right of the property, transferred by the debtor to such third person. Sanders v. Clason, 13 Minn. 379, Gil. 352; Johannes v. Phenix Ins. Co. 66 Wis. 50, 57 Am. Rep. 249, 27 N. W. 414.

A party cannot be deprived of the right to such relief as he should have under the issues and facts, merely because he entertained an erroneous idea of the nature of the action. Logan v. Freerks, 14 N. D. 127, 103 N. W. 426.

Under the contract of insurance made between Griffith and the company, Westby, the injured employee, had no right or claim or cause of action against the company. Finley v. United States Casualty Co. 113 Tenn. 592, 83 S. W. 2, 3 Ann. Cas. 962; Cyc, Anno. 1901–1913, p. 2757; Tozer v. Ocean Acci. Guarantee Corp. 94 Minn. 478, 103 N. W. 509.

The insured, under an indemnity insurance policy, may take settlement, and the insurance company be estopped to deny the right of the insured to recover under the policy or be effected by waiver thereof. Interstate Casualty Co. v. Wallins Creek Coal Co. 163 Ky. 778, L.R.A.

1915F, 958, 176 N. W. 217; St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co. 201 U. S. 173, 50 L. ed. 712, 26 Sup. Ct. Rep. 400; New Orleans & C. R. Co. v. Maryland Casualty Co. 114 La. 154, 6 L.R.A.(N.S.) 562, 38 So. 89; Butler Bros. v. American Fidelity Co. 120 Minn. 157, 44 L.R.A.(N.S.) 609, 139 N. W. 355.

Goss, J.   The questions for decision in the main are merely of fact and within the pleadings.   They arise from an examination of the testimony to ascertain whether there was sufficient conflict to take any issue of fact to the jury.   In other words, the principal question, arising under the pleadings, proof, and motion for judgment for the defendant notwithstanding the verdict of the jury, is whether there is sufficient evidence to sustain the verdict upon the issues as framed by the pleadings.

Plaintiff in 1913, through contractors, erected a block in Grand Forks.   Plaintiff procured of defendant an employer's liability insurance policy indemnifying plaintiff against liability for damages from any injuries from negligence that might occur to the workmen in the erection of said building.   On August 4, 1913, one John Westby was injured while working on said building.   Griffith saw that doctors were secured and that Westby was taken to the hospital, and then notified Holmes, the agent of defendant company and who issued the policy to the plaintiff, and received from him instructions to see Westby and find out the best settlement that could be made with him.   Westby subsequently demanded a settlement of plaintiff, who told him that he had nothing to do with the settlement, but that Holmes wanted him to see what Westby would take to settle, and talked with Westby about a settlement.   Westby demanded $250 damages and the doctor's bills and pay for lost time.   He was told to see the insurance company; that he would have to settle with them.   Griffith, however, took the matter up with Murphy & Toner, defendant's attorneys, and reported to them what Westby wanted in settlement, and sent Westby to their office. No settlement was made.   As the time passed Griffith paid Westby $30 that he was owing him for wages at the time of the accident, and at different dates further amounts aggregating an advance of $150.   Griffith informed the office of Murphy & Toner of this advance, leaving a state-

ment of the amount with their clerk. He was directed by Holmes not to make any further advances to Westby, and did not do so.

On November 23, 1913, nearly four months after the injury, Westby met at Murphy & Toner's office one Hogsett, an adjusting agent or claim agent of the defendant company, and talked with him about settling his claim against Griffith and the contractors. Westby made the same demand that he had made of Griffith. "I asked him for the same thing as I asked Griffith, for $250 and full time, and he was going to see the insurance company about it,—he was going to find out." "He asked me what I wanted, and I told him I wanted $250 and full time." Westby had a statement of his time along with him, and gave it to Hogsett. The copy in evidence shows an itemized claim from October 5th to November 5th, amounting to $276.50, for wages claimed due during the time lost. On the back thereof are figures which Westby swears were written upon the back of the original statement at that time by the agent, viz.,

250.
276.50
———————
526.50
150.
———————
376.50

This computation is quite material under testimony as to the subsequent transaction when the claim was settled. The whole issue of fact is whether this adjuster, in the subsequent settlement in which $376.50 was paid, told Westby, or knowingly lead him to settle under the belief, that the defendant company would pay Griffith this $150 deducted as above in addition to the $376.50 it paid on such settlement to W. Westby saw the agent do this figuring, and the agent then and there made him an offer of $100 damages and full time in full settlement, and which Westby refused to accept. The parties separated without effecting a settlement. Three days later, November 26, 1913, Griffith received a phone call from Murphy & Toner's office to send Westby over, and found him and sent him over.

Hogsett was there, and Westby's testimony is that "he asked me if I

felt any different or if I could do a little cheaper, I don't know for sure how he said it. I said, 'No,' I wanted the same as I asked for the first time."

Q. "What did he say to you then?"

A. " 'Well, come in here and we will settle.' And he took me into the other room," where Murphy was.

They produced a paper, the release that had been prepared for Westby's signature, and as he could not read it, read it to him and gave him a check for $376.50.

Q. "Then, what did you do next?"

A. "Well, Murphy cashed the check and gave me the cash money."

Q. "Yes, what was said at the time?"

A. "I asked him before I signed my name if he was going to settle everything there was against me. He says 'Yes, and this money is all yours, he says.' "

The agent testifies to a different statement. He agrees that when Westby was just about to put the pen to the settlement, Westby interrogated him concerning what was settled. And that Westby had claimed for lost time amounting to $276.50, but says that Westby stated: "I have lost time amounting to $276.50, and I want to get $126.50 and $250. damages." He also admits that Westby told him, he, Westby, had received $150 from Griffith; that "there wasn't any question but what he was asking $250 additional" for damages, nor that the statement was presented for $276.50 for lost time. Hogsett was asked on cross-examination, "Did you tell him he would have to pay out of the $376.50 any expenses incurred?

A. "I did not."

Q. "You testified that you specifically called the attention of Westby at the time this settlement was made that the $150 that Griffith had advanced didn't concern him?

A. *"No, I wouldn't put it that way.* He specifically called that subject to my attention and that is what I said. I didn't go out of my way to say that. It came up naturally in answer to his question, and I didn't put it quite as you state. He simply says: 'What about this $150 that Griffith has paid me,' and I told him that *that was a matter that had nothing to do with this settlement,* possibly I might have used the expression you used, it didn't concern him, I don't know how I put

it, but that was the gist of it, and that I was not authorized to make any payment of that amount as is the fact."

Q. "Did you tell Westby that he would have to pay that back to Griffith?"

A. "No, that question wasn't discussed about his paying it back."

This reflects the contention on the facts of the parties. It might also be stated that there were other bills subsequently paid by the company, growing out of Westby's injury, such as $6 to the Deaconess Hospital; $16 for doctor bills to Wheeler, Williamson, & Campbell, for treatment of Westby and two others; $3 for ambulance charge for conveying Westby and another to the hospital. Which bills were recommended for payment by the adjuster on November 26, 1913, in his report to the company, and in which letter is found the following significant paragraph: "I believe there is no good reason for reimbursing the assured (Griffith) for the $150 lost time he paid to Westby and $50 lost time to Olson, and understand from your telegram of the 26th that you think likewise. The payment of this lost time did not help matters at all, but on the contrary tended to make the claimant more arrogant and independent in our negotiations for settlement. I found it absolutely impossible to get either of them to reduce his offer a cent." Several telegrams are in evidence between the agent and the company. The agent's authority was undoubtedly limited, in fact, to following the instructions of the company; and the company evidently had determined not to reimburse Griffith for this $150 advanced. It evidently based its refusal upon a clause in the policy that, "except as requested by the company, the insured shall not interfere in any way respecting any negotiations for the settlement of any claim or suit, or in the conduct of any legal proceedings," and asserts in the answer that such advances were in violation of and contrary to the contract of insurance. This feature of the case will be later discussed.

Westby's testimony standing alone is sufficient to take the case to the jury on the facts. The testimony of the agent does not change the situation. If we were to weigh the testimony we would say that it strengthened it, all things considered. The jury could conclude from the evidence that Hogsett knew that Westby believed the $150 would be paid in addition to the amount that was paid him, and was deceived and mislead into accepting the money from the agent under the belief

that the $150 advance with other bills pending, would also be paid by the company. Westby had refused the same settlement, $100 and for full time, at the first interview. The agent knew this when, at the opening of the next one three days later, he asked if he could not settle cheaper than his original demand; and, on Westby's statement that he would not take any less, says, "Well, come in here and we will settle," —almost the equivalent of a statement that he would settle at the amount demanded which included the $150 item to Griffith, as Hogsett well knew. And when about to sign the release the agent admits Westby asks him a question, "What about this $150 that Griffith has paid me?" While Westby says he asked "if he was going to settle everything there was against me," and to which the agent replied, "Yes, and this money is all yours," which could be well taken as an assurance that this amount paid was for Westby while the others, Griffith among them, would be paid. And the subsequent report of the agent that day to his company, that "I found it absolutely impossible to get either man to reduce his offer a cent," impeaches his testimony wherein he would have the court believe (as it must conclude if defendant prevails) that Westby did actually cut his claim $150, and accept the amount offered him in the first interview, at that time promptly rejected. Only one offer was made, so there can be no confusion on what offer was meant in that report. There was sufficient testimony to go to the jury on this question.

But appellant claims that Westby knew the limitations, on the authority of Hogsett, to pay only the amount he was authorized by his company to pay, and that he knew the settlement as made was unauthorized. Two answers may be made to this, either of which is sufficient: 1st. This depends for proof entirely upon the agent's testimony, which under the rule of false in part false *in toto,* it might well be found that Westby knew nothing of any want of authority in the agent to settle according to the agreement entered into; and 2d. In order to avail of any such want of authority the company must repudiate the entire settlement. It could ratify any unauthorized settlement its agent made, and has ratified by not repudiating it *in toto.* It could not stand on and rely on rights obtained by an unauthorized settlement, and assert at the same time that the settlement was void because unauthorized. If, by that settlement, it retained $150 to be

paid Griffith in release of Griffith's claim against Westby for that amount advanced Westby by Griffith, it must pay Griffith or repudiate *in toto* the settlement with Westby. It cannot avail itself of a favorable settlement with Westby, relieving itself of liability on its insurance contract, and at the same time assert that the money it retained by its agreement with Westby shall not be paid to Griffith, to whom it agreed with Westby to pay it, simply because it had a defense and possibly could have avoided its obligation to pay anything because of Griffith's advances. Any right to interpose such a defense was waived when it settled Griffith's liability to Westby, and thereby recognized its liability under the insurance contract by performing its contractual responsibility thereunder. It had the option to waive the effect of the advance, and did so by settling under the policy the liability of Griffith to Westby. After so doing, it cannot set up this provision of the policy to defeat Griffith's recovery of money Westby left with it for Griffith under the settlement it made with knowledge of that advance. None of appellant's authorities are applicable to these facts. The instructions were correct and within the issues. Appellant has sought to surround its case with questions of agency that are not properly in it. This lawsuit was born in the agent's deception of Westby, and in his report to his company encouraging refusal to pay Griffith.

Judgment is affirmed.